## G. MERCERSMITH *v.* THE STATE.

8 211
36 309

1. JOINT OFFENDERS. — If two or more persons confederate in a common design to do an unlawful act, all are amenable for any act done by either of them within the general purview of the common design and in the course of its execution. Otherwise, however, if the common design be to do an act not in itself unlawful.

2. SAME. — If two or more engage in a common design to do an unlawful act, and one of them, incited by his own particular malice, or even to further the escape of all, but without the knowledge or consent of the others, commits a felony foreign to the common design, his felonious act is not imputable to his confederates. See the elucidation and illustration of these principles in the present case.

APPEAL from the District Court of Hill. Tried below before the Hon. J. ABBOTT.

The indictment charged the appellant with the murder of William Henderson, on August 11, 1879, by shooting him with a pistol. The jury found him guilty of murder in the second degree, and assessed his punishment at six years in the penitentiary.

A clear and comprehensive statement of the facts will be found in the opinion.

*Tarlton & Bullock*, for the appellant, filed a brief and argument of great ability and research.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J. In our opinion, this cause must be reversed because the court failed to submit the law applicable to the vital issues necessarily raised by the evidence elicited on the trial. Substantially stated, the facts in brief are, that one George Purtell and the defendant were found by deceased inside his house sometime about eleven o'clock at night. Deceased and his wife and step-daughter were returning from prayer-meeting, when, near his house, they heard the cries and screams of the three children who had been left at home during their absence. Deceased hurried on to see what the matter was, when, stepping inside his door, he was immediately fired upon by Purtell. After the second shot, deceased fled, and Purtell pursued him into the yard and fired a third shot, or fourth according to some of the witnesses, which penetrated about the knee-joint, severing the femoral artery, and from which wound he died some fourteen days afterwards.

At the time of the shooting, this appellant was lying upon a pallet upon which the three children slept, and had the eldest, a young girl between ten and twelve years of age, in his arms, with her clothes up, and, as she says, was chok-

ing her. She and the other children were crying and hal-
looing. The door of the house had been broken down and
torn from its hinges by Purtell and defendant when they
effected their entrance into the house, and immediately
after the entry defendant laid down upon the pallet with
the children, whilst Purtell remained standing near the
doorway. But a very few seconds could have elapsed from
their entry until the appearance of Henderson, the deceased,
and the shooting as above detailed. There was evidence
tending to show that these parties had been at the house be-
fore, to see the girls (the one defendant had in his arms
when discovered, and the step-daughter, who had gone to
prayer-meeting), — the intimation being clear that their ob-
ject on these previous visits was carnal intercourse. Whether
such carnal intercourse had taken place previously is not
made manifest. Other evidence tended to show that this
defendant was quite drunk; but after the shooting he got
up and joined Purtell, when they both mounted their horses
and went off together.

In a charge characterized by great precision for its dec-
laration of the principles of law relative to murder of the
first and second degrees, the court further instructed the
jury fully with regard to the general principles of law as
enunciated in the Code with regard to joint or principal
offenders engaged in a common purpose and actuated by a
common design in the accomplishment of an unlawful act,
and their reciprocal liability for the acts of each other.
Penal Code, arts. 74–76, 78. But the charge failed
to draw the distinction which the law makes between
cases of combination and conspiracy to do an unlawful act,
and the liability of one and all for the acts and deeds of all
when the common purpose might be to do an act not in
itself unlawful, and in the execution of which one of the
parties engaged committed a felony.

In the case at bar there would be a marked distinction as
to the liability of the parties when tested by what was the·

common purpose which united them together at the time Purtell alone engaged in the shooting which resulted in the homicide.

If the common purpose was to commit an unlawful act, — as, for instance, burglary, — which would be evidenced by the fact that they broke down the door and forcibly entered the house at night, or that they broke down the door and forcibly entered the house to commit rape (Penal Code, art. 704), then, manifestly, the original purpose and common design being to commit a felony, any act done by either one of the parties whilst engaged in the unlawful act would be imputed and attach its criminality to the other, and make each liable jointly for whatever either may have done in the general purview of the common design during the execution of the original unlawful enterprise. But if the common undertaking was in itself not unlawful, — as, for instance, if the parties entered the house but in the entry did not intend to commit burglary or any other felony or unlawful act, but their object was alone to have carnal intercourse with the girls with whom they had before had such intercourse, and whilst the defendant was in the act of accomplishing this object his companion Purtell, without his knowledge or consent, shot and killed Henderson, — in such event, even though the shooting might have been done to enable both to evade discovery and effect their escape from the house, the defendant would not be liable for the homicide.

It is the lawfulness or criminality of the purpose and common design which gives scope and character to acts committed in connection with its perpetration. To constitute principals in an offence, the purpose must be unlawful. " For if the original intention was lawful and prosecuted by lawful means, and opposition is made by others, and one of the opposing party is killed in the struggle, in that case the person actually killing may be guilty of murder or manslaughter, as circumstances may vary the case, but the other

persons who are present, and who do not actually aid and abet, are not guilty as principals; for they assembled for another purpose, which was lawful, and consequently the guilt of the person actually killing cannot by any fiction of law be carried against them beyond their original intention." Fost. 354; 2 Hawk. P. C., chap. 29, sect. 9; 2 Archb: Cr. Pr. & Pl. (6th ed.) 251–257, and note.

But Mr. Wharton says: "It should be observed, however, that while the parties are responsible for collateral acts growing out of the general design, they are not for independent acts growing out of the particular malice of individuals. Thus, if one of the party of his own head turn aside to commit a felony foreign to the original design, his companions do not participate in his guilt." Whart. on Hom., sect. 202. Yet, "where two persons go out for the common purpose of robbing a third person, and one of them, in pursuit of such common purpose, kill such third person under such circumstances as to make it murder in him who does the act, then it is murder in the other." Id., sect. 338; *Ruloff* v. *The People*, 45 N. Y. 213; *Green* v. *The State*, 13 Mo. 382; 1 Bishop's Cr. Law (4th ed.), sect. 435; *Hannah* v. *The People*, 86 Ill. 243.

Nor is it necessary that the common guilty purpose of resisting to the death any person who should endeavor to apprehend them must have been formed when the parties went out with the common design of committing the unlawful act, to render all principals in a murder by one of them perpetrated whilst making such resistance. *Ruloff* v. *The People*, 45 N. Y. 213; *The State* v. *Nash*, 7 Iowa, 350; *Moody* v. *The State*, 6 Coldw. 299.

In the case of *The People* v. *Knapp*, 26 Mich. 112, it was held, "that where parties combine to commit an offence, and a homicide is committed by part of them in an attempt to escape, one who did not consent and was not privy in fact to the homicide cannot be held responsible by reason of the original combination. There can be no responsibility

against one who is not himself engaged in the acts of his associates, unless it is within the scope of the combination to which he was a party, and thus authorized as his joint act."

It is unnecessary that we should discuss the other questions in the case.

The judgment of the court below will be reversed, in order that upon another trial the court may submit the principles of law applicable to the issues as we have presented them in the foregoing opinion.

*Reversed and remanded.*